[No. 53003-8-I.  Division One.  December 27, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN MARK CLARKE, *Appellant*.

894

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Erin H. Becker* and *Brian M. McDonald, Deputies,* for respondent.

¶1 Cox, C.J. — Except for prior convictions, "any fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt."[1] The *"statutory maximum"* for this purpose is the maximum sentence a judge may impose *"solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."*[2] But judges may make factual findings that increase a defendant's *minimum* sentence so long as that sentence does not exceed the statutory maximum for the crime.[3]

¶2 Here, we must decide whether the indeterminate sentences imposed under the nonpersistent offender stat-

---

[1] *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 2536, 159 L. Ed. 2d 403 (2004) (emphasis added).

[2] *Blakely,* 124 S. Ct. at 2537 (emphasis in original).

[3] *Harris v. United States,* 536 U.S. 545, 565-67, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002).

ute[4] following John Clarke's conviction of two counts of second degree rape violate the Sixth Amendment.[5] We hold that they do not and are otherwise correct. Accordingly, we affirm.

¶3 The State charged Clarke with one count of second degree rape that he committed on December 12, 2001. On February 4, 2002, the scheduled date of his arraignment on that charge, Clarke failed to appear. He committed a second rape on that date. In an amended information, the State charged him with two counts of second degree rape and other crimes not pertinent to this appeal. After the trial court severed the charges for trial, separate juries found Clarke guilty of each charged second degree rape.

¶4 Sentencing for these convictions is controlled by the nonpersistent offender statute, RCW 9.94A.712(3). That statute provides for an indeterminate sentence:

> Upon a finding that the offender is subject to sentencing under this section, the court shall impose a sentence to a maximum term consisting of the statutory maximum sentence for the offense and a minimum term either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence.

(Reviser's note omitted.)

¶5 The statutory maximum sentence for second degree rape is life.[6] The presumptive sentence range for a minimum term under this indeterminate sentencing statute for Clarke was between 102 and 136 months.

¶6 At the sentencing hearing, the State argued that aggravating circumstances warranted imposition of exceptional minimum sentences based on Clarke's eight prior unscored misdemeanor convictions. The State further ar-

---

[4] We hereby grant the State's motion for extension of time to file its respondent's brief.

[5] The nonpersistent offender statute is codified at RCW 9.94A.712.

[6] RCW 9A.44.050(2); 9A.20.021(1)(a).

gued that other aggravating circumstances warranted exceptional minimum sentences in this case.

¶7 The trial court determined there were two bases for imposition of exceptional minimum sentences and imposed minimum terms of 204 months and maximum terms of life on each count, each running concurrently to the other. The first basis was that Clarke's multiple prior unscored misdemeanors, which were violent and threatening in nature, resulted in a standard range sentence that was clearly too lenient. The court also concluded that the operation of the multiple offense policy supported the conclusion that a standard range minimum sentence would be clearly too lenient. Finally, the court determined that either basis alone supported imposition of the exceptional minimum sentences.

¶8 This appeal followed. While this matter was pending, we directed additional briefing by the parties to address issues raised by the United States Supreme Court's recent decision in *Blakely v. Washington*.[7]

## THE SIXTH AMENDMENT AND RCW 9.94A.712

¶9 Clarke argues that the sentence the court imposed under the nonpersistent offender statute is not an indeterminate sentence but a determinate sentence under the Washington Sentencing Reform Act of 1981 (SRA) (chapter 9.94A RCW) that is invalid under *Blakely*. We disagree.

¶10 The plain wording of RCW 9.94A.712(3) mandates a sentence under these circumstances with both a maximum and a minimum term. The maximum term "consist[s] of the statutory maximum sentence for the offense." The minimum term is "either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence." Thus, unlike a determinate sentencing scheme, where the trial court sets a

---

[7] 124 S. Ct. 2531.

sentence for a definite term, this sentencing scheme sets both a maximum and minimum term.

¶11 Under this sentencing scheme, the Department of Corrections (DOC) performs a review at the end of the minimum term of the sentence and recommends to the indeterminate sentence review board whether the defendant should be released. If the board decides that the defendant should not be released, it may establish a new minimum term, not to exceed two years.[8] This is akin to Washington's former indeterminate sentencing scheme, where the trial court imposed the maximum sentence and the parole board set a minimum sentence.[9] The board engaged in periodic reviews to determine whether a defendant should be released to parole.[10]

¶12 We note further that the legislature expressed its intent that sentences under RCW 9.94A.712 are not determinate sentences. Specifically, the exceptional sentencing statute states that "[a] sentence outside the standard sentence range shall be a determinate sentence *unless it is imposed on an offender sentenced under RCW 9.94A.712.*"[11] This unambiguous language shows that the sentencing scheme here is not within the determinate scheme that the legislature formulated for the majority of offenses.

¶13 For these reasons, Clarke's arguments that the nonpersistent offender statute provides for a determinate sentencing scheme are unpersuasive.

¶14 The next question is whether *Blakely* bars the sentence imposed here. Specifically, we must decide

---

[8] RCW 9.95.420(3)(a).

[9] Former RCW 9.95.010, .040 (1983).

[10] *See In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 772 n.1, 92 P.3d 221 (2004) (A juvenile committed under a standard range disposition order receives an indeterminate sentence range set by statute, whereby the low end of the range represents the minimum term and the high end represents the maximum term of confinement.).

[11] RCW 9.94A.535 (emphasis added).

whether the exceptional minimum term portion of this indeterminate sentence is invalid.

■ ¶15 In *Blakely*, the United States Supreme Court applied the rule set out in *Apprendi v. New Jersey*[12] that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[13] The Supreme Court had before it an aggravated exceptional sentence under the determinate sentencing scheme of this state's SRA.[14] The indeterminate sentencing scheme that is now before us was not at issue. Thus, the Court had no occasion to address whether this statute met constitutional muster.

■ ¶16 The focus of *Blakely* was on "the *maximum* sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."[15] There is no question but that the jury verdict for the crime of second degree rape mandates a *maximum* term of life as part of the indeterminate sentence. Thus, *Blakely* is not implicated to the extent of the maximum term of the sentences the court imposed here.

¶17 The essence of Clarke's argument appears to be that *Blakely* applies and invalidates the *minimum* term of his indeterminate sentence because that portion of his sentence was based on the aggravating circumstances set forth in the SRA. This argument is not persuasive.

¶18 Importantly, *Blakely* specifically distinguished from its holding minimum sentences that do not exceed sentence maximums.[16] The Supreme Court stated that because

---

[12] 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[13] *Blakely*, 124 S. Ct. at 2536.

[14] RCW 9A.20.021(1)(b), RCW 9.94A.320, .360, .310(3)(b).

[15] *Blakely*, 124 S. Ct. at 2537 (emphasis added).

[16] *Blakely*, 124 S. Ct. at 2538 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986) (statute required minimum term on finding a particular fact but did not allow a sentence in excess of that otherwise allowed for the underlying offense); *Harris*, 536 U.S. 545 (mandatory term required by specific

*McMillan v. Pennsylvania*[17] involved only a mandatory minimum sentence for visible possession of a firearm, and did "not authorize a sentence in excess of that otherwise allowed for [the underlying] offense,"[18] there was no impingement by the judge on the traditional role of the jury.[19]

¶19 One of the other cases that the Supreme Court cited in *Blakely* was *Harris v. United States.*[20] There, the defendant was convicted following a plea of guilty to one count of distributing marijuana.[21] The relevant statute provided for an enhanced minimum sentence of seven years if the convicted person was found guilty of "brandishing" a firearm.[22] At the sentencing hearing, the judge found that the defendant had brandished the gun and set an enhanced minimum term of seven years as part of the sentence. The Supreme Court framed the issue as "[W]hether *McMillan* stands after *Apprendi.*"[23]

¶20 A plurality of the Court observed that the Fifth and Sixth Amendments ensure that an accused will never get more punishment than he or she bargained for when committing the crime, but they do not promise that he will receive anything less than that.[24] The Court went on to state that "[w]ithin the range authorized by the jury's verdict, however, the political system may channel judicial

---

factual finding was within the term allowed by the jury's verdict); *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) (indeterminate scheme allowed but did not require judge to rely on facts outside the trial record to determine sentence; judge could have imposed the same sentence without finding extraneous facts)).

[17] 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986).

[18] *Blakely*, 124 S. Ct. at 2538.

[19] *Blakely*, 124 S. Ct. at 2540; *see also Spero v. United States*, 375 F.3d 1285 (11th Cir. 2004).

[20] 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002).

[21] *Harris*, 536 U.S. 545.

[22] *Harris*, 536 U.S. at 550-51.

[23] *Harris*, 536 U.S. at 550.

[24] *Harris*, 536 U.S. at 566 (citing *Apprendi*, 530 U.S. at 498 (Scalia, J., concurring)).

discretion—and rely upon judicial expertise—by requiring defendants to serve minimum terms after judges make certain factual findings."[25] The majority in *Blakely* cited this portion of the *Harris* decision together with other cases in distinguishing sentencing for minimum terms from that for maximum terms.[26]

¶21 In this case, the maximum term of the sentences is life. The minimum term the trial court imposed is 204 months. The verdict of the juries in this matter authorized the maximum term, and the minimum term does not exceed that maximum. There is no violation of the Sixth Amendment under *Blakely*.[27]

■ ¶22 Clarke argues that under this statute there is a presumption that the defendant will be released at the end of the minimum term. To the contrary, there is no such presumption.

¶23 Under RCW 9.94A.712, the end of the minimum sentence marks the first date that the defendant is *eligible* for release. Before the end of the minimum term, the DOC must perform a review and make a recommendation to the board whether it is appropriate to release the defendant from total confinement.[28] The board may determine whether release is appropriate at that date, and if not, hold the defendant in confinement for up to two more years, when the DOC would perform another review and would make a new recommendation.[29]

¶24 This scheme is similar to that used under Washington's former indeterminate sentencing scheme, where a prisoner had "no vested right to be released after serving

---

[25] *Harris*, 536 U.S. at 567.

[26] *Blakely*, 124 S. Ct. at 2538.

[27] *Spero*, 375 F.3d at 1287, reached the same result, noting that " 'the political system may channel judicial discretion . . . by requiring defendants to serve minimum terms after judges make certain factual findings' " (quoting *Harris*, 536 U.S. at 567), and stating that "the amount of the enhancement does not matter, so long as the enhanced minimum does not exceed the pre-enhanced maximum."

[28] RCW 9.95.420.

[29] RCW 9.95.420.

their mandatory minimum sentence; the mandatory minimum sentence merely establishe[d] the date for a review of parolability."[30] Thus, Clarke's unfounded assertion that there is a presumption of release does not alter our conclusion.

¶25 Moreover, the argument ignores the fact that the indeterminate sentence imposed has both a minimum term and a maximum term. For purposes of the constitutional analysis, Clarke must deal with both. In view of the case and other authority we have discussed, we fail to see how the sentencing procedures used here violate the Sixth Amendment, as explained in *Apprendi* and its progeny.

## AGGRAVATING CIRCUMSTANCES

¶26 Clarke contends that the trial court engaged in unconstitutional judicial factfinding in imposing an exceptional sentence in his case. We again disagree.

¶27 The trial court relied, in part, on Clarke's prior unscored misdemeanor convictions in concluding that the presumptive sentence was clearly too lenient in light of the purpose of the SRA. The purposes of the SRA include ensuring that the punishment for a crime is proportional to the seriousness of that crime and that the punishment for a crime is commensurate with the punishment imposed on others who commit similar crimes.[31]

¶28 Relying on the Supreme Court's decision in *Blakely*, Clarke contends that each aggravating factor used in this case required two factual findings: (1) the fact of the prior convictions, and (2) the fact that the presumptive sentence was clearly too lenient. Clarke argues that a jury should have made both of these determinations.

¶29 We have already determined that *Blakely* does not apply to the indeterminate sentencing procedures that are

---

[30] *Addleman*, 151 Wn.2d at 772 n.1.

[31] RCW 9.94A.010(1), (3).

before us in this case. But even if that case were implicated, it would not change the result here.

¶30 As we recently observed in another case raising a similar argument, this argument confuses the question of what facts must be found before a sentence is authorized with the question of what punishment may be imposed on the basis of those facts.[32] *Apprendi* and its progeny address the former question. The latter requires the exercise of discretion by the court, as *Apprendi* expressly recognizes.[33] Thus, Clarke's attempt to label a determination that a sentence is clearly too lenient as a factual determination to be made by the jury is not persuasive.

¶31 The SRA sets out a list of illustrative factors "which the court may consider in the exercise of its discretion to impose an exceptional sentence."[34] The aggravating factors in this case, like that in *Blakely*, involved an exercise of judicial discretion to find that the presumptive sentence was clearly too lenient based on certain supporting facts.[35] A factual finding involves the "assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion [of] its legal effect."[36] Our supreme court has stated that the determination that the presumptive sentence is clearly too lenient is a conclusion of law.[37] And in reversing an exceptional sentence based on the

---

[32] *State v. Alkire*, 124 Wn. App. 169, 177, 100 P.3d 837 (2004).

[33] "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case." *Apprendi*, 530 U.S. at 481.

[34] RCW 9.94A.535.

[35] *See State v. Van Buren*, 123 Wn. App. 634, 647, 98 P.3d 1235, 1241-42 (2004).

[36] *Leschi Imp. Council v. Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974).

[37] *State v. Batista*, 116 Wn.2d 777, 789, 808 P.2d 1141 (1991) (Although Clarke contends the decisions in *State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987) and *State v. Smith*, 123 Wn.2d 51, 864 P.2d 1371 (1993) contradict the reasoning in *Batista*, they involve standards of review for exceptional sentences rather than the actual determination of aggravating factors, and they state that the determi-

aggravating factor of deliberate cruelty, the *Blakely* Court's statement that "[t]he *facts supporting that finding* [of deliberate cruelty] were neither admitted by petitioner nor found by a jury"[38] is consistent with this determination. In requiring jury determinations of facts used to increase a sentence beyond the statutory maximum, the *Blakely* Court did not entirely remove judicial discretion from sentencing. The determination that the presumptive sentence is clearly too lenient is an exercise of judicial discretion that stands after *Blakely*.

■ ¶32 Clarke also contends that prior convictions should no longer be excluded from the *Apprendi* rule. Agreement with this argument would amount to an abandonment of *Almendarez-Torres v. United States*,[39] which the Supreme Court expressly reaffirmed. We decline to accept Clarke's invitation to ignore the continuing validity of *Almendarez-Torres*.

■■ ¶33 We now turn to review of the trial court's use of aggravating factors in this case, which is directed to the minimum term only of the sentences. A trial court may impose an exceptional sentence above the standard range if it finds substantial and compelling reasons for such a sentence.[40] An exceptional sentence upward may be reversed on appeal if (1) under a clearly erroneous standard, the trial court's reasons for imposing the sentence are not supported by the record, (2) those reasons do not justify the exceptional sentence as a matter of law, or (3) under an abuse of discretion standard, the exceptional sentence is clearly too excessive or clearly too lenient.[41]

¶34 In this case, the trial court first considered Clarke's prior unscored misdemeanor convictions. Clarke's misde-

nation on review of whether the sentence imposed was clearly excessive is a matter of law.).

[38] *Blakely*, 124 S. Ct. at 2537 (emphasis added).

[39] 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).

[40] RCW 9.94A.535.

[41] RCW 9.94A.585(4); *State v. Branch*, 129 Wn.2d 635, 645-46, 919 P.2d 1228 (1996).

meanor criminal history included five convictions of fourth degree assault, one conviction of menacing, one conviction of malicious mischief, and one conviction of refusal to give information. The State presented six judgments and sentences to prove prior misdemeanor convictions. Significantly, Clarke himself admitted to all his assaults at the sentencing hearing. He stated:

> all my simple assaults and things like that—I think one of them I was hitting the same guy that stole the tools out of the back of my truck four times. And I think most of them are people I know that stole something.
>
> And the domestic violence one was an ex-wife and one a wife-to-be. All of those are girlfriends or ex-wives. Five simple assaults, and three of them were with one person.

¶35 Clarke states that the trial court's entire conclusion regarding prior unscored misdemeanors is contained in conclusion of law number 1, which states:

> The defendant's prior unscored misdemeanor history of violent and threatening offenses is a substantial and compelling reason to depart from the standard range in this case.

¶36 Clarke argues that this conclusion does not provide any explanation of why the presumptive sentence would be clearly too lenient. But in conclusion of law number 4, the trial court stated that

> the failure of the SRA to account for the defendant's prior unscored misdemeanor history of violent crimes . . . result[s] in a presumptive sentence that is clearly too lenient in light of the above-stated purposes of the SRA. The defendant's history is violent and threatening in nature, so the presumptive sentence does not ensure proportionality to the defendant's criminal history. This is particularly true in light of the violent nature of the crimes of conviction . . . . The presumptive range does not adequately protect the public from an individual who has demonstrated his violent tendencies over a period of 15 years. Finally, because the sentence is too low under the circumstances for the offenses committed, it does not promote respect for the law. Accordingly, an exceptional sentence above the standard range is warranted.

¶37 The trial court may rely on either the number of prior unscored misdemeanor convictions[42] or on their relationship with the current crime[43] in concluding as a matter of law that the presumptive sentence would be clearly too lenient. Here, the trial court noted that Clarke's eight prior misdemeanor convictions were neither included in his offender score nor reflected in his standard sentence range. Further, the court stated that most of the prior convictions by their nature involved violence, as did the current crimes. In reaching this conclusion, the court did not look at the facts underlying the prior convictions, but to the names of the crimes themselves. In contrast, another division of this court in *State v. Ortega*[44] concluded under *Apprendi* that the trial court could not impose a sentence greater than the statutory maximum under the Washington Persistent Offender Accountability Act because the court had to consider the underlying facts of prior out-of-state convictions to determine whether those convictions were comparable to Washington crimes.

¶38 We conclude that the approach here was within the exception stated in *Apprendi* that the *fact* of a prior conviction need not be determined by a jury.

¶39 The number and nature of the prior convictions in this case provided substantial and compelling reasons supporting the trial court's decision to impose an exceptional sentence. Sentencing on this ground was proper.

¶40 The trial court also concluded that "each of [the] substantial and compelling reasons—the defendant's prior unscored misdemeanor history of violent offenses and the operation of the multiple offense policy—standing alone, is sufficient justification for the length of the exceptional sentence hereby imposed." Because we conclude that the aggravating factor of unscored prior misdemeanors does not violate *Blakely* or *Apprendi* and the trial court expressly

---

[42] *State v. Ratliff*, 46 Wn. App. 325, 332, 730 P.2d 716 (1986).

[43] *State v. Oksoktaruk*, 70 Wn. App. 768, 773-74, 856 P.2d 1099 (1993).

[44] 120 Wn. App. 165, 84 P.3d 935 (2004).

decided that it would have imposed the sentences on this ground alone, we need not reach the question of whether the multiple offense policy also supported the minimum term exceptional sentencing in this case.

¶41 We affirm the judgment and sentence.

¶42 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.

AGID and ELLINGTON, JJ., concur.

Review granted at 154 Wn.2d 1020 (2005).