[No. 76602-9.   En Banc.]
Argued October 18, 2005.   Decided May 11, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. JOHN MARK CLARKE, *Petitioner*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Brian M. McDonald* and *Erin H. Becker, Deputies,* for respondent.

*Sheryl G. McCloud* and *Mark A. Larranaga* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 FAIRHURST, J. — After two juries convicted John Mark Clarke of two counts of second degree rape, the sentencing court imposed a maximum sentence of life imprisonment as required by statute. The sentencing court also imposed an "exceptional minimum sentence," which is a sentence in excess of the standard sentence range for the crimes charged, based on two aggravating factors. Clarke challenges the constitutionality of his exceptional minimum sentence under *Blakely v. Washington,* 542 U.S. 296, 124 S.

Ct. 2531, 159 L. Ed. 2d 403 (2004). We hold that *Blakely* does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed and affirm the Court of Appeals.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 The King County prosecuting attorney charged the petitioner, John Mark Clarke, with one count of second degree rape for a sexual assault he committed on December 12, 2001. On February 4, 2002, Clarke failed to appear for his arraignment on that charge and that evening he committed a second sexual assault. In a second amended information, the prosecuting attorney charged Clarke with two counts of second degree rape and two other crimes not relevant here. The trial court severed the two rape counts for trial, and separate juries convicted Clarke on each count of second degree rape.

¶3 The sentencing court sentenced Clarke under RCW 9.94A.712, the statute governing sentencing for nonpersistent sex offenders. As required by the statute, the sentencing court imposed a maximum sentence of life imprisonment. The statute also required the sentencing court to impose a minimum sentence and authorized an exceptional minimum sentence upon a finding of certain aggravating factors. The standard range for a minimum sentence for second degree rape was 102 to 136 months. The sentencing court determined that two aggravating factors supported imposing an exceptional minimum sentence of 204 months for each count, to run concurrently. The aggravating factors found by the sentencing court were (1) that Clarke's multiple unscored prior misdemeanors resulted in a standard range sentence that was clearly too lenient and (2) that the multiple offense policy of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, resulted in a standard range sentence that was clearly too lenient. The sentencing court determined that

either aggravating factor was sufficient to support Clarke's exceptional minimum sentence.

¶4 Clarke appealed his exceptional minimum sentence to Division One of the Court of Appeals. In June 2004, while Clarke's appeal was pending, the United States Supreme Court decided *Blakely,* and the Court of Appeals requested supplemental briefing on the exceptional minimum sentence issue. The Court of Appeals held that the trial court's finding of aggravating factors in order to impose Clarke's exceptional minimum sentence did not violate the sixth amendment to the United States Constitution under *Blakely* because the exceptional minimum term did not exceed the maximum term of life imprisonment. *State v. Clarke*, 124 Wn. App. 893, 902, 103 P.3d 262 (2004).

¶5 Additionally, the court determined that even if *Blakely* did apply to exceptional minimum terms, Clarke's misdemeanors were not facts that a jury must find under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Clarke*, 124 Wn. App. at 907. As a result, the court held that the "number and nature" of Clarke's prior convictions "provided substantial and compelling reasons" supporting the exceptional minimum sentence. *Id.* The court did not reach the issue of whether the multiple offense policy of the SRA violated *Blakely*.

¶6 Prior to Division One's decision in *Clarke*, Division Two of the Court of Appeals reached the opposite conclusion and held that imposing exceptional minimum sentences based on facts not found by a jury violates the Sixth Amendment under *Blakely. State v. Borboa*, 124 Wn. App. 779, 102 P.3d 183 (2004), *review granted,* 154 Wn.2d 1020, 116 P.3d 398 (2005). We accepted review to determine the applicability of *Blakely* to exceptional minimum sentences imposed under RCW 9.94A.712 and to resolve the conflict between the divisions of the Court of Appeals. *State v. Clarke,* 154 Wn.2d 1020, 116 P.3d 398 (2005). RAP 13.4(b)(2). This court heard *Borboa* as a companion case to *Clarke*.

## II. ISSUES

A. Whether *Blakely* applies to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed.

B. If *Blakely* applies to exceptional minimum sentences, whether the sentencing court found aggravating factors to support an exceptional sentence in violation of the Sixth Amendment.

C. Whether the aggravating factors provided substantial and compelling reasons to impose an exceptional sentence.

## III. ANALYSIS

A. *Blakely* does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed

■ ¶7 The Sixth Amendment guarantees a criminal defendant the right to "a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Court clarified that the relevant "statutory maximum" for *Apprendi* purposes "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303. In other words, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04.

¶8 In order to violate the Sixth Amendment under *Blakely*, Clarke's exceptional minimum sentence must exceed the relevant statutory maximum. Clarke argues the relevant statutory maximum in his case is the high end of

the standard sentence range, or in other words, his mini-
mum sentence. The State argues that the relevant statu-
tory maximum is the mandatory life sentence required by
RCW 9.94A.712. Resolution of this issue requires this court
to determine whether offenders sentenced under RCW
9.94A.712 serve a determinate sentence based on the mini-
mum term or an indeterminate sentence based on the
mandatory statutory maximum term. For reasons we ex-
plain below, we hold that RCW 9.94A.712 contemplates an
indeterminate sentence.

██ ¶9 We review issues of statutory construction and
constitutional challenges de novo. *City of Redmond v.
Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004) (citing *State
v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001); *Weden v.
San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273
(1998)).

1. *Sentences imposed under RCW 9.94A.712 are
   indeterminate*

██ ¶10 RCW 9.94A.712 establishes the sentencing re-
gime for nonpersistent offenders convicted of specified
sex crimes, including rape in the second degree.[1] RCW
9.94A.712(3) directs the sentencing judge to impose both a
maximum term and a minimum term.[2] The maximum term

---

[1] RCW 9.94A.712(1) provides in relevant part:

(1) An offender who is not a persistent offender shall be sentenced under this
section if the offender:

    (A) Is convicted of:

    (i) Rape in the first degree, rape in the second degree, rape of a child in the
first degree, child molestation in the first degree, rape of a child in the second
degree, or indecent liberties by forcible compulsion;

    . . . .

committed on or after September 1, 2001.

[2] RCW 9.94A.712(3) provides:

    (3) Upon a finding that the offender is subject to sentencing under this
section, the court shall impose a sentence to a maximum term consisting of the
statutory maximum sentence for the offense and a minimum term either
within the standard sentence range for the offense, or outside the standard

"consist[s] of the statutory maximum sentence for the offense," which for the class A felony of rape in the second degree, is a term of life imprisonment. RCW 9.94A.712(3); RCW 9A.20.021. Therefore, the statutory maximum identified in RCW 9.94A.712(3) differs from other statutory maximums because it is mandatory, whereas most statutory maximums merely establish the outside limit of available sentences. *See* RCW 9A.20.021.

¶11 Under RCW 9.94A.712(3), the sentencing court must also impose a minimum sentence, which may be "either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence." RCW 9.94A.712(3) (reviser's note omitted). Former RCW 9.94A.535 (2003) allows courts to impose a sentence outside the standard sentencing range when there are "substantial and compelling reasons justifying an exceptional sentence" and provides a nonexclusive list of possible reasons for an exceptional sentence, commonly called aggravating factors.

¶12 Legislative history indicates that RCW 9.94A.712 contemplates a system of indeterminate sentencing. In 1981, the legislature adopted the SRA, which replaced Washington's former indeterminate sentencing regime with determinate sentencing. *See* ch. 9.94A RCW. In 2001, the legislature redesigned the determinate sentencing regime for certain sex offenders by enacting RCW 9.94A.712, which was part of an act concerned with the management of sex offenders in the community. LAWS OF 2001, 2d Spec. Sess., ch. 12, § 303. Some of the Senate Committee on Human Services and Corrections' stated reasons for enacting the sex offender management act were concerns related to determinate sentencing, including that it "does not allow the state to return a person under supervision in the community to prison beyond the end of his or her defined term." 2001 FINAL LEGISLATIVE REPORT, 57th Wash. Leg. at 233. As a

sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence.
(Reviser's note omitted).

result, the enactment of RCW 9.94A.712 indicates the legislature's desire to move away from determinate sentencing of sex offenders.

¶13 Additionally, the structure of the sentencing regime the legislature enacted provides proof that RCW 9.94A.712 contemplates indeterminate sentences. The statute governing aggravating factors states that "[a] sentence outside the standard sentence range shall be a determinate sentence *unless* it is imposed on an offender sentenced under RCW 9.94A.712." Former RCW 9.94A.535 (emphasis added). Unlike determinate sentencing, RCW 9.94A.712 directs the sentencing court to impose both a maximum and a minimum term. Also, RCW 9.94A.712 repeatedly references statutes under chapter 9.95 RCW, which governs indeterminate sentencing in Washington.

¶14 Moreover, end of sentence review under RCW 9.94A.712 is performed by the Indeterminate Sentence Review Board (ISRB). Near the end of the offender's minimum term, the Department of Corrections must provide a recommendation about whether to release the offender. RCW 9.95.420(3)(a). The ISRB then conducts a hearing "to determine whether it is more likely than not that the offender will engage in sex offenses if released on conditions to be set by the board." *Id.* The ISRB must release the offender unless it determines by a preponderance of the evidence that the offender will commit sex offenses if released. *Id.*

¶15 If the ISRB determines that the offender should not be released, the ISRB imposes a new minimum sentence, which cannot exceed two years. *Id.* As the Court of Appeals noted, this system "is akin to Washington's former indeterminate sentencing scheme, where the trial court imposed the maximum sentence and the parole board set a minimum sentence." *Clarke*, 124 Wn. App. at 899. If the ISRB decides to release an offender, the offender remains under community custody until the expiration of his maximum sentence, subject to the terms and conditions imposed by the board. RCW 9.94A.712(5), .713. If the offender violates

any of the conditions of his release, the ISRB may transfer the offender to a "more restrictive confinement status." RCW 9.94A.713(4); RCW 9.95.435. The manner in which this sentencing regime operates indicates that sentences imposed under RCW 9.94A.712 are indeterminate.

¶16 Clarke argues that RCW 9.94A.712 does not establish an indeterminate sentencing scheme because there is a presumption that the offender will be released when the minimum term expires. It is true that the end of sentence review provided for by RCW 9.95.420 differs from Washington's former indeterminate sentencing system, where the presumption was that the offender would remain in custody unless the ISRB determined that he had been rehabilitated. *See* RCW 9.95.100. However, even if the presumption has shifted in favor of release, there is no guaranty that release will occur. An offender sentenced under RCW 9.94A.712 is serving a life sentence with the *possibility* of release if, upon expiration of his minimum term, the preponderance of the evidence indicates he will not reoffend. Moreover, an inmate has no constitutional right to release prior to the expiration of a valid sentence because his conviction extinguishes his liberty interests. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979).

¶17 By enacting RCW 9.94A.712, the legislature has directed that a life sentence is a valid sentence for rape in the second degree and that such a sentence must be imposed. Clarke is serving a life sentence with the possibility, but no guaranty, of earlier release. Therefore, we hold that Clarke's sentence under RCW 9.94A.712 is an indeterminate life sentence.

2. Blakely *does not prohibit judicial fact-finding when imposing a minimum sentence*

¶18 Because Clarke is serving an indeterminate life sentence under RCW 9.94A.712, the relevant "statutory maximum" that the sentencing court may impose without any additional findings is life imprisonment. The standard

range for minimum sentences under RCW 9.94A.712 provides a guideline for when the ISRB should consider release, but the standard range does not in any way establish Clarke's maximum sentence. Because Clarke's sentence is indeterminate, his exceptional minimum sentence, although part of his punishment, is irrelevant under *Blakely* analysis because the relevant statutory maximum for *Apprendi* purposes is life imprisonment.[3]

¶19 The Sixth Amendment does not bar judicial fact-finding related to a minimum sentence that does not exceed the relevant statutory maximum.[4] Prior to *Apprendi* and *Blakely*, the United States Supreme Court rejected a Sixth Amendment challenge to a mandatory minimum sentencing regime. In *McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), the Court upheld a sentencing statute that required a mandatory minimum sentence of five years if the court found that a defendant visibly possessed a firearm during the commission of the crime. The Court rejected the argument that the Sixth Amendment barred such judicial fact-finding because the statute "neither alter[ed] the maximum penalty for the crime committed nor create[d] a separate offense calling for a separate penalty." *Id.* at 87-88.

¶20 When the Court decided *Apprendi*, it specifically distinguished *McMillan*. "We do not overrule *McMillan*. We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict—a limitation

---

[3] The dissent fails to provide any support for its assertion that, in addition to Clarke's life sentence, Clarke's *minimum* term also qualifies as the "'relevant statutory *maximum*'" contemplated by *Blakely* and *Apprendi. See* dissent at 898. This assertion defies logic.

[4] The dissent's suggestion that judicial fact-finding in relation to a minimum term violates the Sixth Amendment represents a misreading of *Apprendi* and its progeny. *See* dissent at 899. *Blakely, Apprendi,* and *Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), all clearly state that judicial fact-finding in relation to sentencing violates the Sixth Amendment *only* when it increases the defendant's punishment *above the statutory maximum. See, e.g., Ring,* 536 U.S. at 602 ("A defendant may not be 'expose[d] . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'" (quoting *Apprendi*, 530 U.S. at 483)).

identified in the *McMillan* opinion itself." *Apprendi*, 530 U.S. at 487 n.13. Two years later, in *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002), a plurality of the Court further clarified the distinction between improper fact-finding related to maximum sentences and permissible fact-finding related to minimum sentences.

> *McMillan* and *Apprendi* are consistent because there is a fundamental distinction between the factual findings that were at issue in those two cases. *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime—and thus the domain of the jury—by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As *McMillan* recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution.[5]

*Id.* at 557.

¶21 In *Blakely*, the Court clearly stated that judicial fact-finding is not improper in the context of indeterminate sentencing because the offender has no right to a lesser sentence than his maximum sentence.

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing

---

[5] The dissent argues that *McMillan* and *Harris* are distinguishable from this case because the mandatory minimum sentencing schemes at issue in those cases operated " 'solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding.' " Dissent at 899 (quoting *McMillan*, 477 U.S. at 88). That is not a basis for distinguishing *McMillan* and *Harris*—on the contrary, those cases are entirely analogous to this case and guide our holding. As in this case, the sentencing courts in both *McMillan* and *Harris* engaged in fact-finding to support a mandatory minimum sentence that fell within the greater indeterminate sentence.

The dissent concedes that RCW 9.94A.712 operates as an indeterminate sentencing scheme under which Clarke is serving an indeterminate life sentence. Dissent at 897. As in *McMillan* and *Harris*, the mandatory minimum in this case did not exceed the statutory maximum; thus, the judicial fact-finding in relation to that mandatory minimum did not violate the Sixth Amendment.

discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.

*Blakely*, 542 U.S. at 309. When the juries convicted Clarke, he knew that he risked life imprisonment and had no expectation of earlier release. As a result, judicial fact-finding that served to increase Clarke's minimum sentence was not improper because Clarke had no legal right to a lesser sentence than life imprisonment. Therefore, we hold that in the context of indeterminate sentencing under RCW 9.94A.712, the Sixth Amendment does not bar judicial fact-finding related to an exceptional minimum sentence when the exceptional sentence does not exceed the maximum sentence imposed.

¶22 In so holding, we explicitly reject Division Two's analysis in *Borboa* that *Apprendi* and *Blakely* "require that the jury find each fact needed to support the sentence that the defendant *actually must serve*." *Borboa*, 124 Wn. App. at 787. This is not the rule developed by *Apprendi* and its progeny. As *Blakely* made clear, judicial fact-finding may not increase the penalty for a crime beyond the "maximum" sentence a judge may impose "*without* any additional findings."[6] *Blakely*, 542 U.S. at 303-04. This maximum sentence is distinct from the sentence a defendant may actually serve. If a jury had to find each fact needed to support the sentence that offenders actually must serve, then offenders would have the right to have a jury make release determinations. The legislature has not created a system for empanelling juries to make such determina-

---

[6] The dissent cites *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995), for the proposition that a criminal defendant is entitled "to a jury determination of every contested fact authorizing a punishment." Dissent at 898. *Gaudin* does not address fact-finding related to sentencing but instead concerns the fact-finding necessary to convict a defendant of the underlying crime, which is indisputably the province of the jury and not the issue in this case. *See Gaudin*, 515 U.S. at 510-11.

tions, and *Blakely* does not compel the design of such a system.

¶23 Although we reject Clarke's challenge to his exceptional minimum sentence under the Sixth Amendment, amicus curiae Washington Association of Criminal Defense Lawyers (WACDL) urges this court to reverse his sentence under the Washington Constitution. WACDL argues that Washington Constitution article I, section 21 provides greater protection of a defendant's right to a jury trial than does the federal constitution. We decline to consider this argument because Clarke did not brief the issue, and this court does not consider arguments raised first and only by an amicus. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 827, 854 P.2d 1072 (1993).

¶24 As a result, we reject Clarke's constitutional challenge to his exceptional minimum sentence because we hold that *Blakely* does not apply to exceptional minimum sentences imposed under RCW 9.94A.712 that do not exceed the maximum sentence imposed.

B.  The sentencing court did not find aggravating factors in violation of the Sixth Amendment

¶25 Because we hold that *Blakely* does not apply to Clarke's exceptional minimum sentence, we need not reach the issue of whether the specific fact-finding performed by the sentencing court violated the Sixth Amendment in this case. While the particular aggravating factors found here may violate the constitution in other contexts, we hold that *Blakely* does not bar judicial fact-finding to support an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed.

C.  Substantial and compelling reasons existed to impose an exceptional minimum sentence

¶26 In addition to challenging the constitutionality of his exceptional minimum sentence under *Blakely*, Clarke also argues that the aggravating factors used did not

provide substantial and compelling reasons for the exceptional minimum sentence.

> An exceptional sentence upward may be reversed on appeal if (1) under a clearly erroneous standard, the trial court's reasons for imposing the sentence are not supported by the record, (2) those reasons do not justify the exceptional sentence as a matter of law, or (3) under an abuse of discretion standard, the exceptional sentence is clearly too excessive or clearly too lenient.

*Clarke,* 124 Wn. App. at 905 (citing RCW 9.94A.585(4); *State v. Branch,* 129 Wn. 2d 635, 645-46, 919 P.2d 1228 (1996)).

¶27 The sentencing court determined that two aggravating factors supported an exceptional sentence upward: Clarke's prior unscored misdemeanors and the operation of the multiple offense policy. The court held that each of the aggravating factors standing alone was sufficient justification for the exceptional sentence. Therefore, because we hold that Clarke's prior misdemeanors provide a substantial and compelling reason for the exceptional sentence, we need not consider whether the operation of the multiple offense policy also provides a substantial and compelling reason.

¶28 First, the sentencing court's reasons for imposing an exceptional sentence upward are supported by the record. The State introduced judgments and sentences for six prior misdemeanor convictions and Clarke did not object to the admission of any of those documents. Furthermore, Clarke himself acknowledged that he possessed five prior convictions for assault. Thus, the record clearly supports the sentencing court's finding of an aggravating factor based on Clarke's misdemeanors.

¶29 Second, the misdemeanors justify the exceptional sentence as a matter of law. Former RCW 9.94A.535(2)(j) lists prior unscored misdemeanors as a possible aggravating factor. Additionally, the sentencing court concluded that the violent nature of the majority of Clarke's misdemeanors

rendered a standard range sentence "clearly too lenient." Clerk's Papers at 108. Clarke argues that the sentencing court "makes the conclusory statement that Mr. Clarke's standard range sentence of 102 to 136 months would be too lenient without explaining why." Pet. for Review at 10. However, in its findings of fact and conclusions of law, the sentencing court explains with specificity why a standard range sentence was insufficient, including that it would not ensure proportionality to the defendant's violent criminal history, adequately protect the public, or promote respect for the law. Based on these conclusions, the prior misdemeanors clearly justify the exceptional sentence.

¶30 Finally, given the quantity and violent nature of the misdemeanors, in conjunction with Clarke's two sexual assault convictions, we cannot say that the sentencing court abused its discretion by imposing an exceptional sentence upward. A 204 month exceptional sentence is not "clearly too excessive," particularly when RCW 9.94A.712 authorizes a sentence of life imprisonment for Clarke's convictions. As a result, we hold that there were substantial and compelling reasons for the sentencing court to impose an exceptional minimum sentence on Clarke.

## IV. CONCLUSION

¶31 We hold that, under the indeterminate sentencing scheme of RCW 9.94A.712, an exceptional minimum sentence does not violate the Sixth Amendment if it does not exceed the maximum sentence imposed. Because we hold that Clarke's exceptional minimum sentence does not violate *Blakely*, we need not reach the issue of whether the particular aggravating factors employed by the sentencing court violate the Sixth Amendment. Finally, we hold that substantial and compelling reasons support Clarke's exceptional minimum sentence. Thus, we affirm Clarke's exceptional minimum sentence and the Court of Appeals.

C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and J.M. JOHNSON, JJ., concur.

¶32 SANDERS, J. (dissenting) — The majority concludes a judge may impose an exceptional minimum sentence on the basis of an aggravating factor neither found by the jury nor admitted by the defendant. I disagree. The Sixth Amendment prohibits a judge from imposing a penalty not authorized by the facts found by the jury or admitted by the defendant. *See Blakely v. Washington*, 542 U.S. 296, 305, 124 S. Ct. 2531, 2538, 159 L. Ed. 2d 403 (2004). An exceptional minimum sentence is a penalty. And under Washington law, a judge may impose an exceptional minimum sentence only if an aggravating factor exists. Consequently, a judge cannot impose an exceptional minimum sentence on the basis of an aggravating factor neither found by the jury nor admitted by the defendant.

¶33 Washington's indeterminate sentencing scheme requires a sentencing court to impose a maximum and a minimum term. *See* RCW 9.94A.712. The court must impose a maximum term of the "statutory maximum sentence for the offense." RCW 9.94A.712(3). And the court must impose a minimum term "within the standard sentence range for the offense," *id.*, unless an aggravating factor exists, in which case the court may impose an exceptional minimum term. An offender serving an indeterminate sentence becomes eligible for conditional release only upon completion of his minimum term.

¶34 John Mark Clarke was convicted of two counts of second degree rape. An offender convicted of second degree rape must receive an indeterminate sentence. *See* RCW 9.94A.712(1)(a)(i). The maximum sentence for second degree rape is life imprisonment and the standard range minimum sentence is 102 to 136 months. The sentencing court imposed a maximum sentence of life imprisonment. However, it imposed an exceptional minimum sentence of 204 months because the judge found two aggravating factors. Neither aggravating factor was admitted by Clarke or found by the jury.

¶35 The Sixth Amendment guarantees a criminal defendant the right to a jury trial. U.S. CONST. amend. VI. This

right entitles a criminal defendant to a jury determination of every contested fact authorizing a punishment. *See United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The "statutory maximum" sentence is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303. So, a judge may impose a punishment only if it is authorized by the facts found by the jury or admitted by the defendant.

¶36 An exceptional minimum sentence is a punishment. And Washington law authorizes a judge to impose an exceptional minimum sentence only if an aggravating factor exists. *See* RCW 9.94A.535 *and* 9.94A.712(3). Under *Blakely*, a judge may impose an exceptional minimum sentence only if the jury finds or the defendant admits an aggravating factor. Here, the sentencing court relied on aggravating factors neither found by the jury nor admitted by Clarke. Therefore, Clarke's exceptional minimum sentence is invalid.

¶37 The majority contends Clarke's exceptional minimum sentence "is irrelevant under *Blakely* analysis because the relevant statutory maximum for *Apprendi* purposes is life imprisonment." Majority at 891. The majority is incorrect. Under *Blakely*, a court cannot impose any punishment not authorized by the jury verdict or the defendant's admissions. "A defendant may not be 'exposed . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'" *Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (emphasis omitted) (quoting *Apprendi*, 530 U.S. at 483). The "relevant statutory maximum" is the "maximum punishment" the sentencing court is authorized to impose "[b]ased solely on the jury's verdict

finding." *Ring*, 536 U.S. at 597. In other words, the "relevant statutory maximum" was a maximum term of life imprisonment *and a minimum term of 136 months.*

¶38 Apparently, the majority believes an exceptional minimum sentence is not a punishment. I find this incredible. Conditional release is no guaranty. But it is a prisoner's equivalent to Pascal's Wager: "If you gain, you gain all; if you lose, you lose nothing." BLAISE PASCAL, PENSÉES (1670). A prisoner treasures such hope. Any delay is punishment of the keenest sort.

¶39 Indeed, the Sixth Amendment may permit a court to impose a mandatory minimum sentence on the basis of judicial fact-finding, but only when the facts found by the jury or admitted by the defendant *already authorized the judge to impose the mandatory minimum sentence.* The question "is one not of form, but of effect." *Apprendi*, 530 U.S. at 494. "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring*, 536 U.S. at 602.

¶40 The mandatory minimum sentencing scheme at issue in *McMillan v. Pennsylvania* passed Sixth Amendment muster because "it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding." 477 U.S. 79, 88, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986). Likewise, the Court upheld a mandatory minimum sentencing scheme in *Harris v. United States* because it "does not authorize the judge to impose 'steeply higher penalties'—or higher penalties at all—once the facts in question are found." 536 U.S. 545, 554, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). Here, the same is not the case.

¶41 The facts found by the jury did *not* authorize the sentencing court to impose an exceptional minimum sentence. The jury found no aggravating factors. And under Washington law, a court cannot impose an exceptional minimum sentence unless an aggravating factor exists. Because an exceptional minimum sentence is indisputably

a punishment, the Sixth Amendment prohibited the sentencing court from finding the aggravating factors necessary to support Clarke's exceptional minimum sentence.

¶42 Accordingly, I dissent.

ALEXANDER, C.J., concurs with SANDERS, J.