146 P.3d 931 (2006)
STATE of Washington, Respondent,
v.
Gregory Edward MONROE, Appellant.
No. 30239-0-II.
Court of Appeals of Washington, Division 2.
November 7, 2006.
*932 Anton Laurens Knappert, The Defender Association, Seattle, WA, Thomas E. Weaver Jr., Bremerton, WA, for Appellant.
Randall Avery Sutton, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.
John Scott Blonien, Criminal Justice Division, Olympia, WA, for Other Parties.
QUINN-BRINTNALL, J.
¶ 1 Gregory Edward Monroe pleaded guilty to two counts of first degree rape, one count of first degree burglary with sexual motivation, five counts of first degree kidnapping, and one count of second degree assault. In State v. Monroe, 126 Wash.App. 435, 109 P.3d 449 (2005), we affirmed Monroe's convictions but reversed the exceptional minimum term sentences imposed pursuant to former RCW 9.94A.712 (2001). The sentencing reversal was based on our holding that a defendant sentenced under former RCW 9.94A.712 had the right to have a jury find those facts necessary to impose a minimum sentence above the standard range for the offense.
¶ 2 The Washington Supreme Court subsequently granted the State's petition for review and remanded the matter for our further consideration in light of State v. Clarke, 156 Wash.2d 880, 134 P.3d 188 (2006), which overruled our holding in Monroe. Under Clarke, Monroe had no right to have a jury find the facts necessary to support his exceptional minimum term sentences. We therefore now address the issue left unresolved by our original opinion, namely, Monroe's contention that the trial court's justifications for the exceptional minimum terms are not supported by the record. We disagree with this contention and now affirm Monroe's sentencing.

FACTS
¶ 3 After Monroe stalked and became obsessed with raping 11-year-old L.R., he broke into her family home while no one was there. Monroe carried a large knife. At around 3:30 P.M., while Monroe was in L.R.'s bedroom, L.R. came home with her friend, V.H., also an 11-year-old girl. According to the girls, Monroe confronted them, picked up L.R., placed the knife to her neck, and told them to do what he said or he would kill L.R.
¶ 4 Monroe ordered the two into an upstairs bedroom and cut the phone cord out of the wall as they passed by it. Once in the bedroom, Monroe told the girls to take off their clothes. When they refused, he ordered L.R. to tie V.H.'s hands with the phone cord. Monroe then cut off L.R.'s shirt and ripped off her bra. Monroe again ordered V.H. to strip and this time she complied. He then forced both girls to perform oral sex on him. Afterwards, Monroe had sexual intercourse with L.R. According to the girls, he also fondled V.H. and placed his finger in her vagina. Monroe then stated to the girls, "who owns you now" and "I like you young bitches." Clerk's Papers (CP) at 50. He *933 then tied the girls up with various electrical cords.
¶ 5 After approximately 90 minutes, K.L., a 15-year-old friend of L.R.'s sister, arrived at the home. Monroe confronted K.L. and, when she attempted to leave, he overpowered her and ordered her into the bedroom. He then tied her up.
¶ 6 Shortly thereafter, L.R.'s 15-year-old sister, M.K., and 14-year-old stepbrother, B.S., arrived at the home. M.K. went upstairs and, when she entered her bedroom, she was confronted by Monroe, who then tied her up with an electrical cord and placed her with the others. Monroe then went downstairs and attacked B.S. He put B.S. in a headlock and cut his back with the knife. Once Monroe subdued B.S., he tied him up and put him in the bedroom.
¶ 7 Eventually, L.R.'s stepfather arrived home. When he entered the house, Monroe was standing at the top of the stairs wielding the knife. Monroe told the stepfather that he did not want trouble. Monroe then walked down the stairs, exited the house, and fled.
¶ 8 Monroe was ultimately arrested and he gave a confession that, except for two details, mirrors the events as set forth above. According to Monroe, rather than hold the knife to L.R.'s neck and threaten to kill her, he pointed the knife at her and told her he would hurt her. Monroe also maintained that he had not digitally penetrated V.H.
¶ 9 Monroe pleaded guilty to two counts of first degree rape, one count of first degree burglary with sexual motivation, five counts of first degree kidnapping, and one count of second degree assault. Monroe stipulated in the plea agreement that the sentencing court could consider the probable cause statement and discovery in the case as the material facts. Under former RCW 9.94A.712, the sentencing court was required to impose both a maximum term and a determinate minimum term for the rape counts and the burglary with sexual motivation count. The maximum term for each count was life, as required under former RCW 9.94A.712(3). In exchange for Monroe's guilty plea, the State agreed to recommend that the court impose minimum term sentences of 511 months, the top of Monroe's standard range.[1]
¶ 10 At the sentencing hearing, the trial court heard from all five victims, their families, the prosecutor, Monroe, and his attorney. The trial court then imposed exceptional minimum terms of 651 months. The exceptional minimum terms resulted by imposing sentences above the standard range on the rape counts.[2] To support the sentences, the trial court adopted the uncontested facts set forth in the pre-sentence investigation report and concluded that Monroe's crimes involved deliberate cruelty, victims who were particularly vulnerable, and a high degree of sophistication and planning. As to the first aggravating factor, the trial court made the following finding: "Defendant exhibited deliberate cruelty to the victims, including but not limited to his prolonged imprisonment of the two 11 year-old first degree rape victims and his multiple sexual assaults upon these victims." CP at 82. The trial court considered each aggravating factor to be a sufficient basis for the exceptional minimum terms.

ANALYSIS
¶ 11 According to Clarke, a judge may find the facts necessary to impose exceptional minimum terms under former RCW 9.94A.712. 156 Wash.2d at 896, 134 P.3d 188. Such judicial fact-finding does not violate the principles set forth in Blakely v. Washington, *934 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). As such, our review here is limited to Monroe's contention that the trial court's justifications for the exceptional minimum terms are clearly erroneous. That is, according to Monroe, there is insufficient evidence to find that his crimes involved deliberate cruelty, particularly vulnerable victims, or a high degree of sophistication and planning. See RCW 9.94A.585(4); State v. Branch, 129 Wash.2d 635, 645-46, 919 P.2d 1228 (1996).[3] Because the sentencing court considered each justification independently sufficient, we need only find that one is supported by substantial evidence in order to affirm the trial court's sentencing. Branch, 129 Wash.2d at 646, 919 P.2d 1228; State v. Zatkovich, 113 Wash.App. 70, 78, 52 P.3d 36 (2002). We conclude that the record amply supports the finding that Monroe's crimes involved deliberate cruelty.
¶ 12 Deliberate cruelty is "gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself." State v. Tili, 148 Wash.2d 350, 369, 60 P.3d 1192 (2003). "To justify an exceptional sentence, the cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offenseelements of the crime that were already contemplated by the legislature in establishing the standard range." Tili, 148 Wash.2d at 369, 60 P.3d 1192.
¶ 13 Two cases held to involve deliberate cruelty are illustrative here. In State v. Falling, 50 Wash.App. 47, 53-55, 747 P.2d 1119 (1987), an exceptional sentence was properly imposed on a rape conviction after Falling broke into the victim's home while she was asleep and forced her to engage in vaginal and oral sex with him. The rapes lasted 20 to 30 minutes, during which Falling repeatedly called the victim a "bitch" and threatened to kill her if she resisted or screamed. Falling, 50 Wash.App. at 49, 55, 747 P.2d 1119. When he departed, Falling threatened to kill the victim if she called the police.
¶ 14 In Tili, 148 Wash.2d at 370-72, 60 P.3d 1192, the court approvingly discussed Falling and held that an exceptional sentence was properly imposed after Tili broke into the victim's home and raped her. Tili repeatedly struck the victim with a heavy pan; he told her he had a knife and he was going to kill her; and he anally and vaginally raped her while forcing her to say that she "liked it." Tili, 148 Wash.2d at 355-56, 60 P.3d 1192.
¶ 15 Monroe's rapes of L.R. and V.H. are strikingly similar to those found to involve deliberate cruelty in Falling and Tili. Monroe brutally violated two young girls in the sanctity of L.R.'s home. See Falling, 50 Wash.App. at 55, 747 P.2d 1119 ("Falling raped the victim in her bedroom. This was an invasion of her `zone of privacy.'"). Monroe admitted that he threatened them with a large knife that he displayed. He eliminated their hope for help by ripping out the phone line. Monroe forced the two friends to strip in front of each other and he violently ripped L.R.'s clothes off. After raping L.R. and forcing both girls to perform oral sex on him, Monroe demeaned and humiliated both of them by telling them that he owned them and that he liked "you young bitches." CP at 50. After 90 minutes of this, and after tying the girls up, he continued the ordeal by attacking, one by one, the girls' friends and family membersrepeatedly eliminating their undoubted prayers for help. Monroe's rapes did involve deliberate cruelty on a level not associated with such crimes and not otherwise accounted for in his sentencing. The trial court's finding of deliberate cruelty is not clearly erroneous and the trial court did not err in imposing exceptional minimum terms on this basis.
¶ 16 Affirmed.
We concur: HOUGHTON, C.J., and BRIDGEWATER, J.
NOTES
[1] Monroe stipulated to his standard range as 384 to 511 months. This stipulated standard range was the sum of the standard ranges for the two rape counts and three of the five kidnapping counts, which ran consecutive to each other under RCW 9.94A.589(1)(b). The two other kidnapping counts ran concurrently to all of the counts because the trial court considered them the same criminal conduct under RCW 9.94A.589(1)(a).
[2] More specifically, the 651-month exceptional minimum terms resulted by sentencing Monroe to 254 months on count I (first degree rape with a standard range of 138 to 184 months) and 193 months on count II (first degree rape with a standard range of 93 to 123 months).
[3] Monroe does not argue that the exceptional minimum terms are "clearly too excessive" or that the justifications for the sentencing are legally erroneous. See former RCW 9.94A.535(2)(a)-(b), (d)(iii) (2002); Branch, 129 Wash.2d at 645-46, 919 P.2d 1228.