241 P.3d 468 (2010)
STATE of Washington, Respondent,
v.
Anthony Darnell McCHRISTIAN, Appellant.
No. 39027-2-II.
Court of Appeals of Washington, Division 2.
November 2, 2010.
*470 Jeffrey Erwin Ellis, Portland, OR, for Appellant.
Melody M. Crick, Pierce County Prosecuting Attorney, Tacoma, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 A jury found Anthony Darnell McChristian guilty of first degree assault. The trial court sentenced McChristian at the low end of his standard range, 93 months of incarceration, plus a 24-month deadly weapon sentence enhancement and a 24- to 48-month community custody term. The trial court's sentence also indicated that McChristian's sentence carried a 60-month mandatory minimum term of incarceration. McChristian appeals his conviction and sentence, asserting that (1) the prosecutor's closing argument improperly lowered the State's burden of proof, and (2) the trial court erred by imposing a mandatory minimum sentence. We affirm.

FACTS
¶ 2 On January 17, 2008, Alexander Williams and some of his friends walked into a Safeway store in Spanaway, Washington. McChristian, Daniel Rice, and Carajon Valliant followed Williams into the store and began arguing with him. The three men ran at Williams and attacked him; video surveillance from the store shows the three men punching, kicking, and wrestling with Williams as he tried to flee. The fight ended when the men ran out of the store. After the fight, Williams realized that he had been stabbed in the abdomen, but he could not identify which man had stabbed him. Video surveillance recordings do not clearly show which of the three men stabbed Williams.
¶ 3 The State charged McChristian with one count of first degree assault and one count of first degree malicious mischief.[1] The State also alleged a deadly weapon enhancement and that McChristian committed the offenses to obtain or maintain his membership or to advance his position in the hierarchy of an organization, association, or identifiable group.
¶ 4 A jury trial began on January 27, 2009. At trial, the State presented evidence that McChristian, Rice, and Valliant were members of a gang and that Williams was a member of a rival gang. Williams testified that approximately a week before the Safeway incident, members of the rival gangs, including McChristian and himself, nearly broke into a fight at a high school basketball game. Williams further testified that McChristian, Rice, and Valliant attacked him in the Safeway store and that, after the three men fled, he realized that he had been stabbed; he did not see any of the men carrying a weapon and the police did not locate a weapon. Rice testified that he did not know that anyone was carrying a knife at the fight, but that, after the fight, he saw that Valliant's hand was bleeding. Rice further testified that he took Valliant to the hospital and that Valliant almost lost two fingers.
¶ 5 In its closing argument, the State argued that it did not need to present any direct evidence that McChristian had stabbed Williams because it charged him as an accomplice. The State then stated the law of *471 accomplice liability and summarized the evidence it had presented that McChristian, Rice, and Valliant were acting as accomplices in the commission of a first degree assault against Williams.
¶ 6 The State continued its closing argument:
Now, the defense may argue that the State cannot prove that [McChristian] knew that one of his accomplices had a knife. The defense may argue the State can't prove that [McChristian] had a knife, and the State can't prove that he knew one of his accomplices had a knife. But you know what, the State doesn't have to prove that he knew.
Why do I say that? The law requires the State to prove that [McChristian] knew his actions would promote or facilitate the commission of the crime, the crime of all three attacking and assaulting the victim.
. . . .
In this case, in the commission of the crime, which is the assault, [McChristian] or an accomplice stabs the victim. Since all were accomplices in the crime of assaulting the victim, each is guilty of whatever happened during the assault of the victim. They all are guilty of assaulting because they all did it together.
The knife, when it became introduced by one of the accomplices, it elevated that assault to an assault in the first degree. And each participant in the crime of the assault is guilty for wielding that knife, no matter who held that knife. That's what the law is.
4 Report of Proceedings (RP) at 198-201.
¶ 7 The trial court gave the following accomplice liability jury instruction:
A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.
The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
Clerk's Papers (CP) at 28.
¶ 8 McChristian did not object to the prosecutor's closing arguments or to the trial court's jury instructions. The jury found McChristian guilty of first degree assault. The jury also entered a special verdict, finding that McChristian or an accomplice was armed with a deadly weapon during the commission of the crime. The jury entered another special verdict, finding that McChristian did not commit first degree assault to obtain or maintain his membership or to advance his position in the hierarchy of an organization, association, or identifiable group.
¶ 9 The trial court sentenced McChristian to 93 months of incarceration, the low end of his standard range for his offender score of zero, plus 24 months for the deadly weapon enhancement and a 24- to 48-month community custody term. The trial court also imposed a mandatory minimum sentence of 60 months on McChristian's 93-month incarceration term. McChristian timely appeals.

DISCUSSION

Prosecutorial Misconduct
¶ 10 McChristian contends that the prosecutor committed misconduct during closing argument by misstating the law on accomplice liability, which lowered the State's burden of proof for first degree assault. Because the prosecutor's closing argument was consistent with the law on accomplice liability, we disagree.
*472 ¶ 11 A defendant claiming prosecutorial misconduct bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998). We review a prosecutor's allegedly improper comments in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given. State v. Russell, 125 Wash.2d 24, 85-86, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129, 115 S.Ct. 2004, 131 L.Ed.2d 1005 (1995). In determining whether prosecutorial misconduct occurred, we first evaluate whether the prosecuting attorney's comments were improper. State v. Reed, 102 Wash.2d 140, 145, 684 P.2d 699 (1984). If the prosecuting attorney's statements were improper and the defendant made a proper objection to the statements, then we consider whether there was a substantial likelihood that the statements affected the jury. Reed, 102 Wash.2d at 145, 684 P.2d 699.
¶ 12 Because McChristian did not object to the prosecutor's closing argument, he must show that any improper comment was so flagrant or ill-intentioned that an instruction could not have cured the prejudice. State v. Charlton, 90 Wash.2d 657, 661, 585 P.2d 142 (1978). Here, even assuming that the prosecutor misstated the law of accomplice liability, McChristian has failed to demonstrate that a curative instruction could not have cured any resulting prejudice. Accordingly, he has waived his prosecutorial misconduct claim. But even if McChristian did not waive his prosecutorial misconduct claim, his contention fails on the merits because the prosecutor's closing argument properly stated the law on accomplice liability.
¶ 13 Washington's complicity statute, RCW 9A.08.020, provides that a person is guilty of a crime if he is an accomplice of the person that committed the crime. A person is an accomplice under the statute if, with knowledge that it will promote or facilitate the commission of the crime, he aids another person in committing it. RCW 9A.08.020. General knowledge by an accomplice that a principal intends to commit "a crime" does not impose strict liability for any and all offenses that follow. State v. Roberts, 142 Wash.2d 471, 513, 14 P.3d 713 (2000). Our Supreme Court has made clear, however, that an accomplice need not have knowledge of each element of the principal's crime to be convicted under RCW 9A.08.020; general knowledge of "the crime" is sufficient. Roberts, 142 Wash.2d at 513, 14 P.3d 713 (citing State v. Rice, 102 Wash.2d 120, 683 P.2d 199 (1984); State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984)). "[A]n accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality." Davis, 101 Wash.2d at 658, 682 P.2d 883. In other words, "an accused who is charged with assault in the first or second degree as an accomplice must have known generally that he was facilitating an assault, even if only a simple, misdemeanor level assault, and need not have known that the principal was going to use deadly force or that the principal was armed." In re Pers. Restraint of Sarausad, 109 Wash.App. 824, 836, 39 P.3d 308 (2001).
¶ 14 Contrary to McChristian's contention, the State was not required to prove that he had knowledge that the principal intended to assault Williams with a deadly weapon. Instead, the State needed to prove only that McChristian knew that the principal intended to commit an assault generally. By facilitating the assault on Williams, McChristian ran the risk that an accomplice would elevate the assault to a first degree offense. See Davis, 101 Wash.2d at 655, 682 P.2d 883 (accomplice's use of a firearm elevated robbery to first degree offense). Accordingly, the prosecutor's closing arguments regarding accomplice liability were proper, did not lower the State's burden of proof to convict McChristian for first degree assault as an accomplice, and did not constitute misconduct.

Mandatory Minimum Sentence
¶ 15 McChristian asserts a number of errors related to the trial court's imposition of a 60-month mandatory minimum sentence. Specifically, he asserts that the trial court erred by imposing a mandatory minimum sentence because (1) the trial court failed to *473 enter findings of fact supporting the mandatory minimum term, (2) the sentence violated his Sixth Amendment right to a jury trial, (3) the State did not allege a mandatory minimum sentence in its charging documents, and (4) sufficient evidence did not support the sentence. Although findings of fact are required before imposing a mandatory minimum sentence under RCW 9.94A.540(1)(b), the trial court's oral findings were sufficient and did not violate McChristian's Sixth Amendment right to a jury trial. Additionally, assuming without deciding that the State was required to provide McChristian with notice that he was subject to a mandatory minimum term, the charging document here alleged facts sufficient to inform him that he may be subject to a mandatory minimum term. Last, sufficient evidence supported McChristian's sentence. Accordingly, we affirm.

A. Findings of Fact Required
¶ 16 McChristian first contends that RCW 9.94A.540(1)(b) requires a factual finding that a defendant meets the requirements of the statute before a trial court may impose a mandatory minimum sentence. We agree.
¶ 17 RCW 9.94A.540(1) provides in part,
Except to the extent provided in subsection (3) of this section, the following minimum terms of total confinement are mandatory and shall not be varied or modified under RCW 9.94A.535:
. . . .
(b) An offender convicted of the crime of assault in the first degree or assault of a child in the first degree where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years.
¶ 18 Thus, a person convicted of first degree assault is subject to a mandatory minimum term of incarceration if he committed the assault (1) with use of force or means likely to result in death or (2) with intent to kill the victim. RCW 9.94A.540(1)(b); In re Pers. Restraint of Tran, 154 Wash.2d 323, 329, 111 P.3d 1168 (2005). Because under RCW 9A.36.011(1)(a) an offender may commit first degree assault by the use of "any force or means likely to produce great bodily harm" (emphasis added), the mandatory minimum sentence provisions of RCW 9.94A.540(1)(b) do not automatically attach to a first degree assault conviction. Tran, 154 Wash.2d at 329, 111 P.3d 1168.
¶ 19 Additionally, our Supreme Court has held that a sentencing enhancement finding that the defendant committed first degree assault while armed with a deadly weapon under former RCW 9.94A.602 (1983) and former RCW 9.94A.120 (1998) does not automatically trigger RCW 9.94A.540(1)(b)'s mandatory minimum sentence provision. "The lack of direct overlap between the assault and mandatory minimum statutes indicates that the legislature intended to increase the punitive requirement for certain assaults that are characterized by unusually (within the world of assault) violent acts or a particularly sinister intent." Tran, 154 Wash.2d at 329-30, 111 P.3d 1168. Although our Supreme Court has not squarely addressed the issue, inherent in our Supreme Court's determination that the elements of a first degree assault conviction under RCW 9A.36.011, a class A felony, are not coextensive with the mandatory minimum sentencing provisions of RCW 9.94A.540(1)(b), is the requirement of a factual finding sufficient to impose a mandatory minimum sentence under the statute.

B. Judicial Fact-Finding Sufficient
¶ 20 Having determined that a factual finding is required under RCW 9.94A.540(1)(b), we turn to whether a judicial finding is sufficient. McChristian contends that Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), requires a jury to find whether the facts underlying the defendant's first degree assault conviction warrants a mandatory minimum sentence under the statute. We disagree.
¶ 21 Although this appears to be an issue of first impression in Washington, in an analogous case interpreting exceptional minimum sentences under former RCW 9.94A.712 (2005), our Supreme Court held that Blakely does not apply to exceptional minimum sentences that do not exceed the maximum sentence allowed. State v. Clarke, 156 Wash.2d *474 880, 884, 134 P.3d 188 (2006), cert. denied, 552 U.S. 885, 128 S.Ct. 365, 169 L.Ed.2d 143 (2007). In reaching its decision, our Supreme Court noted that "[i]n order to violate the Sixth Amendment under Blakely, [the defendant's] exceptional minimum sentence must exceed the relevant statutory maximum." Clarke, 156 Wash.2d at 886, 134 P.3d 188. Under Blakely, "the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 303-04, 124 S.Ct. 2531. Accordingly, the Sixth Amendment does not bar judicial fact-finding related to a minimum sentence that does not exceed the relevant statutory maximum. Clarke, 156 Wash.2d at 891, 134 P.3d 188.
¶ 22 Here, McChristian's 60-month mandatory minimum sentence did not increase the penalty for first degree assault beyond the statutory maximum standard range sentence. Thus, a judicial finding that McChristian's crime met the requirements of RCW 9.94A.540(1)(b) is sufficient under Blakely.
¶ 23 Here, the trial court did not enter any specific findings that McChristian committed first degree assault (1) with use of force or means likely to result in death or (2) with intent to kill the victim. But at sentencing, the trial court stated,
You are also lucky in that Mr. Williams didn't die, and you'd be looking at a lot more time than you're looking at now. And that's fortunate for you because, clearly, that easily could have happened, given the fact that there was a weapon involved.
. . . .
You said, "I just wanted to fight him." And for everybody here, you understand what happens when you do that kind of thing. All sorts of things are out of your control at that point. And that's the behaviorthat's a problem. And the fact that you or somebody else had a knife, that just really ups the ante, as it were, in terms of the punishment because it's a very serious situation, and very easily, Mr. Williams could have died. Very easily.
5 RP at 250-51.
¶ 24 The trial court's statement at sentencing that Williams could have easily died because of McChristian's crime indicated that it found he had committed first degree assault in a manner likely to result in the victim's death. This judicial finding is sufficient to trigger RCW 9.94A.540(1)(b)'s mandatory minimum sentence provision.

C. Notice
¶ 25 McChristian contends that the trial court's imposition of a mandatory minimum sentence violated his due process right to notice because the State did not include in his charging document information sufficient to inform him that he was subject to a mandatory minimum sentence. Assuming without deciding that the State is required to inform a defendant that his charged crime may carry with it a mandatory minimum sentence, McChristian's charging document alleged facts sufficient to support a mandatory minimum sentence under the statute. Here, McChristian's charging document alleges that he or an accomplice intentionally assaulted Williams "with a firearm or deadly weapon or by any force or means likely to produce great bodily harm or death." CP at 5 (emphasis added). And RCW 9.94A.540(1)(b) requires imposition of a mandatory minimum sentence upon a finding that the defendant committed first degree assault with use of "force or means likely to result in death." Accordingly, the State put McChristian on notice that the manner in which he committed his assault on Williams may subject him to a mandatory minimum sentence. McChristian's claimed due process violation has no merit.

D. Sufficient Evidence
¶ 26 Last, McChristian appears to argue that RCW 9.94A.540(1)(b) does not allow a trial court to impose a mandatory minimum sentence on a person convicted of first degree assault on a theory of accomplice liability. We disagree.
*475 ¶ 27 The meaning of a statute is a question of law that we review de novo. State v. Ague-Masters, 138 Wash.App. 86, 106, 156 P.3d 265 (2007) (citing State v. Tracy, 128 Wash.App. 388, 395, 115 P.3d 381 (2005), aff'd, 158 Wash.2d 683, 147 P.3d 559 (2006)). In interpreting a statute, our purpose is to determine and enforce the intent of the legislature. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). "`[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Jacobs, 154 Wash.2d at 600, 115 P.3d 281 (alteration in original) (quoting Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002)). In ascertaining the "plain meaning" of a statute, we look not only to the ordinary meaning of the language at issue, but also to the general context of the statute, related provisions, and the statutory scheme as a whole. Jacobs, 154 Wash.2d at 600, 115 P.3d 281. If, upon this examination, the provision is subject to more than one reasonable interpretation, it is ambiguous and the rule of lenity requires us to interpret the statute in favor of the defendant. Jacobs, 154 Wash.2d at 600-601, 115 P.3d 281. In the case of multiple statutes or provisions governing the same subject matter, we will give effect to both to the extent possible. State v. Becker, 59 Wash.App. 848, 852, 801 P.2d 1015 (1990) (citing Tommy P. v. Bd. of County Comm'rs of Spokane County, 97 Wash.2d 385, 391, 645 P.2d 697 (1982)). Only when two statutes dealing with the same subject matter conflict to the extent that they "cannot be harmonized" will a more specific statute supersede a general statute. Becker, 59 Wash.App. at 852-53, 801 P.2d 1015.
¶ 28 RCW 9.94A.540(1)(b) states, "An offender convicted of the crime of assault in the first degree or assault of a child in the first degree where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years." McChristian concedes that an accomplice to a first degree assault is included within the statute's first reference to an "offender," but he argues that the second reference to "offender" indicates that the legislature intended the provision to apply only to the principal offender. We disagree. RCW 9.94A.540(1)(b)'s plain language does not indicate that a mandatory minimum term cannot be imposed against an accomplice to the crime of first degree assault. And under the complicity statute, RCW 9A.08.020,[2] it is clear that the legislature intended to punish accomplices to a crime in the same manner as the principal. Thus, reading the statutes in harmony, the legislature intended RCW 9.94A.540(1)(b)'s use of "offender" to apply equally to principals and accomplices.
¶ 29 Accordingly, we affirm McChristian's conviction and the sentence.
We concur: HUNT, P.J., and VAN DEREN, J.
NOTES
[1] The trial court dismissed the malicious mischief charge after the State rested.
[2] RCW 9A.08.020 states in pertinent part,

(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.
(2) A person is legally accountable for the conduct of another person when:
. . . .
(c) He is an accomplice of such other person in the commission of the crime.