IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32735-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCOS A. AVALOS BARRERA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — The State charged Marcos Avalos Barrera as an accomplice to

two counts of assault in the first degree based on undisputed evidence showing that Mr.

Avalos Barrera was present at the time of the assaults and that he had threatened the

victims earlier in the day. Yet, upon Mr. Avalos Barrera's *Knapstad*[1] motion, the trial

court dismissed the charges, finding the evidence insufficient to show that Mr. Avalos

Barrera participated in or acted in a manner to encourage the assaults. We agree with the

trial court and affirm.

## FACTS

Marcos Avalos Barrera was a known member of the Marijuanos gang—a gang

that has been feuding with the Munoz family for years. On June 22, 2013, around 7:30

p.m., Mr. Avalos Barrera was "jumped," outside of a local convenience store, by A.M., a

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

member of the Munoz family. Clerk's Papers (CP) at 18. A.M., who was with his brother Jessie and his father Juan,[2] struck Mr. Avalos Barrera twice, knocking him out.

After the Munozes left, a police officer arrived at the convenience store and questioned Mr. Avalos Barrera about the assault. Mr. Avalos Barrera told the officer "Don't worry about it, I'll take care of it. Street justice." CP at 295.

Mr. Avalos Barrera left the convenience store and began walking toward the Davalos home (a known hangout for Marijuanos gang members), which is "kitty corner" from the Munoz home. CP at 17. On his way, Mr. Avalos Barrera passed the Munoz home and threatened members of the family who were outside. Specifically, he held his fingers "like he was pointing a gun" and yelled "none of you will come back a[l]ive tonight." CP at 162.

Later that day, Mr. Avalos Barrera sought treatment for his injuries at the hospital. While there, law enforcement again contacted Mr. Avalos Barrera and he again indicated that he did not wish to speak with officers, explaining "he would take care of it." CP at 303. He assured the officer "that nothing would happen [that] evening." CP at 314.

Late that same evening, Humberto Davalos held a barbeque at the Davalos residence. Shortly after 11:00 p.m., officers responded to a shooting that occurred on the corner between the Davalos residence and the Munoz residence.

---

[2] Because we reference multiple members of the Munoz family, we refer to them by their first names. No disrespect is intended.

2

Video surveillance recovered from outside of the Davalos house shows Rigoberto Vasquez standing in front of the house making taunting gestures in the direction of the Munoz residence just before 11:00 p.m.[3] The video does not contain audio. The video also shows Mr. Vasquez lifting his shirt to display a gun as two other individuals, Luis and Domingo Quintero, join in the front yard. Mr. Vasquez and Luis Quintero can be seen walking aggressively in the direction of the Munoz residence, while Domingo Quintero walks in the opposite direction and briefly disappears from the frame. Domingo Quintero returned to the front yard with Humberto Davalos.

Simultaneous footage of the back of the Davalos house shows Mr. Avalos Barrera in the alley. Eventually, Domingo Quintero can be seen running from the front to the back of the house, where it appears he alerts Mr. Avalos Barrera to the already ongoing dispute.

Meanwhile, in the front of the house, footage shows Mr. Davalos pulling a gun and pointing it in the direction of the Munoz residence.

Shortly after the weapon is pulled, Mr. Avalos Barrera is observed entering the front yard for the first time since the altercation began. The video shows Mr. Avalos Barrera saying something. It is not clear what was said or to whom he was talking. After

---

[3] Although the surveillance video only shows the Davalos house, witnesses confirmed that the gestures were made toward the Munozes home.

approximately 25 seconds on the frame, Mr. Avalos Barrera walks away from the altercation.

Weapons were fired. Using shot spotter technology,[4] police determined that the first shot fired came from the Munoz side. The video surveillance shows Mr. Davalos being helped to the ground after suffering what appears to be a shot to the leg. After Mr. Davalos was shot, Mr. Avalos Barrera returned to the front yard to check on him. The video indicates that within 10 seconds, Mr. Avalos Barrera again left the front yard and this time returned to the back alley.

Police responded to the dispute less than two minutes after the first shot was fired. They investigated the shooting for weeks. Upon submitting a report to the prosecutor's office, police recommended Mr. Avalos Barrera be charged with felony harassment under RCW 9A.46.020(2)(b) and riot under RCW 9A.84.010.

Despite the police recommendation, on August 7, 2013, the State filed an information charging Mr. Avalos Barrera with two counts of first degree assault through accomplice liability. The victim listed for count one was A.M. and the victim listed for count two was Jessie Munoz. The information also charged Mr. Avalos Barrera with two

---

[4] "Shot Spotter is an acoustic monitoring device which uses sensors that are placed in multiple locations in Quincy. Through the use of triangulation and computer software, Shot Spotter is able to locate where gunshots are fired." CP at 18.

4

counts of felony harassment for the threats made against A.M. and Jessie Munoz earlier in the evening on June 22, 2013.

On August 13, 2013, at a probable cause hearing for the issuance of an arrest warrant, the court concluded that the State did not have probable cause for arrest based on either of the assault charges. The court did conclude, though, that probable cause supported the issuance of an arrest warrant based on the two felony harassment charges.

Mr. Avalos Barrera filed a motion for pretrial dismissal under CrR 8.3(c). After argument on the motion, the court dismissed the two assault charges, concluding that the State did not present sufficient evidence to establish prima facie cases for the assault charges. Later, the State filed a motion for dismissal without prejudice of the two remaining counts of felony harassment. The court entered an order dismissing the two counts without prejudice.

The State appeals the trial court's dismissal of the two counts of assault.

## ANALYSIS

The only issue raised on appeal is whether the trial court erred in granting Mr. Avalos Barrera's *Knapstad* motion. Specifically, the State argues that the trial court erred when it dismissed the counts because there was sufficient evidence that Mr. Avalos Barrera was ready to assist and was encouraging the gunfight.

Under *Knapstad*, a trial court may grant a criminal defendant's pretrial motion to dismiss if there are no disputed facts, and the undisputed facts are insufficient to support

a finding of guilt. *State v. Knapstad*, 107 Wn.2d 346, 356, 729 P.2d 48 (1986). "The court must decide 'whether the facts which the State relies upon, as a matter of law, establish a prima facie case of guilt.'" *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010) (quoting *Knapstad*, 107 Wn.2d at 356-57). A trial court's pretrial dismissal of criminal charges pursuant to a *Knapstad* motion is subject to de novo review. *Id.*

Here, because Mr. Avalos Barrera did not contest that the assault took place, resolution of the *Knapstad* motion turns on whether evidence supports Mr. Avalos Barrera's complicity in the assault. Under RCW 9A.08.020(3)(a), a person is an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she: (i) Solicits, commands, encourages, or requests such other person to commit it; or (ii) Aids or agrees to aid such other person in planning or committing it."

Physical presence and assent alone are insufficient to establish accomplice liability. *In re Welfare of Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979). However, evidence of presence at the scene plus indicia that the putative accomplice was "ready to assist" may be sufficient. *Id.* An individual is liable as an accomplice if "'he associates himself with the undertaking, participates in it as in something he desires to bring about, and seeks by his action to make it succeed.'" *Id.* (quoting *State v. J-R Distribs. Inc.*, 82 Wn.2d 584, 593, 512 P.2d 1049 (1973).

A criminal defendant charged with assault in the first degree as an accomplice "'must have known generally that he was facilitating an assault, even if only a simple,

6

misdemeanor level assault, and need not have known that the principal was going to use deadly force or that the principal was armed.'" *State v. McChristian*, 158 Wn. App. 392, 401, 241 P.3d 468 (2010) (quoting *In re Pers. Restraint Petition of Sarausad*, 109 Wn. App. 824, 836, 39 P.3d 308 (2001)).

The State argues that Mr. Avalos Barrera "must have known about the pending firefight," because he is seen on video yelling. Br. of Appellant at 10. It further asserts that the threats Mr. Avalos Barrera made toward the Munoz family earlier in the evening indicate his desire to bring about the assault.

In support of its argument, the State relies on *State v. Asaeli*, 150 Wn. App. 543, 208 P.3d 1136 (2009), where the court found that because the evidence did not show the defendant was aware of any plan to assault the victim, the evidence was insufficient to support a conviction for accomplice liability. The State argues that here, unlike *Asaeli*, Mr. Avalos Barrera was aware of the purported plan to assault.

The State's argument has no merit. If the State had presented the court with evidence that Mr. Avalos Barrera was a high ranking member in the Marijuanos gang and that he had the authority to instruct other members how to act, then the State might have presented sufficient evidence to support a prima facie case of accomplice liability. Here, though, the State provided no such evidence.

The evidence presented shows that Mr. Avalos Barrera was not in the front yard when the confrontation began. Evidence does not indicate what Mr. Avalos Barrera said

when he did enter the front yard. Nor does the evidence suggest that Mr. Avalos Barrera had any knowledge of an impending gunfight, let alone that his purpose was to bring about a gunfight that night. In fact, law enforcement reports reveal that to the contrary, Mr. Avalos Barrera assured officers nothing would happen that night.

Put simply, there is no evidence that Mr. Avalos Barrera solicited, commanded, encouraged, or requested another individual to assault the Munozes on the night in question. Further, there is no evidence that Mr. Avalos Barrera aided or agreed to aid Humberto Davalos, Luis Quintero, or Rigoberto Vasquez in the commission of the assault.

As a result, there is insufficient evidence to support a prima facie case for accomplice liability to assault in the first degree.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

8